| | |
|---|---|
| STATE OF SOUTH CAROLINA | IN THE U.S. DISTRICT |
| COUNTY OF CHARLESTON | COURT |
| EUTOPIA WILLIAMS | |
|     Plaintiff | Case No: 2:25-cv-4617-RMG-MGB |
|     v. | |
| CHARLESTON COUNTY HOUSING AND REDEVELOPMENT AUTHORITY, a/k/a CCHRA, | |
| Angela Childers as Agent | |
| DATED MAY 27, 2025 | |

## COMPLAINT

On March 20, 2024, a charge was filed with the U.S. Equal Employment Opportunity Commission (EEOC) by Eutopia Williams (Williams) against Charleston County Housing and Redevelopment Authority (CCHRA). EEOC has given Notice Right to Sue. The Plaintiff reserves the right to submit additional relevant information, should any be revealed during the process of this complaint.

### I.  JURISDICTION

This court has jurisdiction over this matter in South Carolina, has subject matter over this jurisdiction over this lawsuit and personal jurisdiction over the parties.

The venue is proper in Charleston County.

[1]

## II. PARTIES

PLAINTIFF EUTOPIA WILLIAMS, is a citizen of South Carolina and resides at 2635 Dellwood Avenue, North Charleston, SC 29405

DEFENDANT, Charleston County Housing and Redevelopment Authority, is a business entity of South Carolina and resides at 2106 Mt. Pleasant Street, Charleston, SC 29403

Angela Childers, is a citizen of South Carolina and resides at 2106 Mt. Pleasant Street, Charleston, SC 29403

## III. FACTUAL ALLIGATIONS

1. On September 6, 2023 (Exhibit A), Williams emailed the CEO Angela Childers

2. ("hereinafter Childers") and her supervisor Jennifer Fields-Carter ("hereinafter Carter")

3. requesting reasonable accommodation due to unexplained health concerns. This email

4. was sent prior to a scheduled meeting to discuss Williams first evaluation (Exhibit B),

5. ever since she was employed with CCHRA. The evaluation was conducted on August 25,

6. 2023, by Carter. Williams had expressed her grievances regarding the evaluation because

7. she was evaluated on a position (Inventory Specialist) that she was not hired for was

8. required to perform the duties along with the duties of Procurement Contract Specialist.

9. After our meeting was over Carter encouraged me speak to Childers regarding the email

10. sent prior to the meeting. Williams mentioned the email to Childers, Childers advised

[2]

11. that she didn't have chance to read the email, but Williams can explain it to her at that

12. time. Williams reiterated what was in the email and Childers advised that it was ok, and

13. Williams will be able to work out back in the trailer, she just needed to bring a note from

14. her doctor. On September 7, 2023, Williams provided doctors note (Exhibit C) from her

15. Physician Dr. Silver. The doctor advised that Williams has an autoimmune disease, and

16. she explained how Williams's condition affects her in several ways. Doctor Silver also

17. advised that the mold in her work environment needs to be mitigated or she needs to be

18. provided accommodation. As noted in the email sent to both Childers and Carter,

19. Williams did not state she can no longer work, the request was to work offsite, due to

20. hazards within the building. Joseph Floyd Manor (JFM) is CCHRA flagship building

21. which is comprised of residents and staff members. On September 7, 2023, Childers

22. requested a copy of the mold report Williams was referring to, to Williams's surprise

23. Childers did not have a copy of this report or any other report. Williams provided one of

24. the reports to Childers and advised that the other report Childers will have to request

25. from the former property manager Stephanie Gladden. When Childers granted permission

[3]

26. on September 6th to work in the trailer, Williams thought all was well, but she didn't hear

27. anything else since the request for the mold report on September 7th. On September 8,

28. 2023, Williams ask Carter if Childers had given any instructions on the move into the

29. trailer, Carter advised, "No" and Williams must go to speak with her now because

30. Childers will be on vacation. Williams went to speak with Childers, and she advised

31. Williams that "they haven't figured out the process yet". Williams asked how long before

32. she would know anything, Childers stated well there's a bid process, maybe 30 days, she

33. wasn't sure. Williams then asked what she should do in the meantime, will she be able to

34. work at Brighton Place ("hereinafter BP"), which is another property of CCHRA.

35. Childers told Williams "No", to working at BP. On the same day of the 8th, Childers sent

36. Williams and Carter, an email (Exhibit E). To summarize Childers advised that the mold

37. report I provided did not express elevated fungal ecology levels, where my office was

38. located, and that there will be a mold remediation and air scrubbed completed in "the

39. building". Childers went to state that Williams reasonable accommodation request to

40. work offsite would not allow Williams to complete her job as necessary. Also, Williams

41. is needed onsite due to a HUD Review on September 25, 2023. Williams stayed through

[4]

42. the HUD Review, and remediation on the first floor was complete with no plan of action

43. for the remaining floors. Suddenly Childers was unwilling to accommodate Williams to

44. work in the trailer in the back of JFM. The trailer was placed out back for the same

45. reason Williams has requested. Another employee Erica Bryant ('hereinafter Bryant"),

46. Executive Housing Choice Voucher Director

47. was having complications when in the building so she initially works from home, then at

48. BP, until Childers requested a trailer for her to work out of at JFM. Williams asked

49. Childers if the remaining floors will be remediated, of course because of her work

50. environments consist of all 13 floors. On October 2, 2023, after advisement from

51. Childers in a previous email dated September 8th, Williams requested leave (Exhibit F)

52. and provided a doctor's note (Exhibit G) advised along with her request. On October 3,

53. 2023, Childers advised via email (Exhibit H) that "action was taken" and remediation

54. was completed for the building, contrary to Williams doctor's note. Childers suggested

55. moving Williams's office to the other side of the building, which is the same area as

56. Bryant's office was located but Bryant remained in the trailer until leaving in February

57. 2024. This suggests that Childers knew the action that she had taken was not effective, so

58. she left Bryant out back in the trailer. The other suggestions Childers made by email were

59. already in place years prior to her arrival. Childers ask Williams for any suggestions and

60. Williams provided her with the suggestion to find the cause of the mold and correct, then

61. remediate all areas throughout the building. Williams provided Childers with suggestions

62. based off her experience working in all CCHRA developments and dealing with mold

63. remediation, specifically at JFM. Key points, Williams "work environment" consist of

64. the entire building, she was not limited to the first floor; there was no on-going plan of

65. action to remediate the mold; Childers was aware of the mold throughout the building

66. prior to Williams's request, because Bryant was working remotely before she ordered the

67. trailer to accommodate her at JFM; why didn't Childers requested Bryant return to her

68. office after the remediation.

69. Williams received a letter via US Postal Mail service from Childers (Exhibit I), dated

70. October 11, 2023, Williams responded by US Postal Mail, on October 22, 2023

71. The letter came back on or around November 4, 2023, the letter was resent on

72. November 9, 2023 (Exhibit J). Williams, after no response from Childers Williams

[6]

73. Learned the letter never reached Childers office (Exhibit K). Williams mailed the letters

74. Again, on December 21, 2023 (Exhibit L). Childers provided a response letter dated

75. November 9, 2023, but Williams letters never reached CCHRA until December 26, 2023.

76. Williams was in communication with Childers, but it appeared that Williams was iced

77. Out but Childers. Williams learned of her termination in May 2024 through a

78. PEBA inquiry. Williams never received proper termination notification.

### IV. First Charge of Action

### Discrimination regarding Disability Violation of Title I of the ADA/ADAAA

79. Plaintiff established disability, way of Doctor Silvers note advising of Williams disability ( Autoimmune Disease), which is recognized by ADA. Prima Facie was established.
80. A non-protected person (Bryant) was treated better than Williams. Howell vs Summit Cty,. 9th Dist. Summit No. 20958, 2002-Ohio 5257

### V. Second Charge of Action
### No Termination Notification

81. No notice of termination was provided to the Plaintiff. Williams found out about termination through third party.

### PRAYER FOR RELIEF

WHEREFORE, having fully set forth her Complaint, Plaintiff pray that the Court grant by verdict or judgement an award of all damages she may recover under the law under all causes of action in this Complaint, including actual damages, consequential damages, special damages and punitive damages in an amount to be determined by a jury, or non-jury and declaratory and injunctive relief, including attorney's fees and costs as allowed by any statute or court rule, and such other and further relief as the Court may deem just and proper.

Respectfully Submitted,

BY: /s/ Eutopia Williams

Eutopia Williams
Pro Se Plaintiff
2635 Dellwood Avenue
North Charleston, SC 29405
Phone: 843-640-8993
Email: eutopwill35@gmail.com

Dated this 28th day of May 2025
In North Charleston, South Carolina

CERTIFICATE OF SERVICE

By my signature below I hereby certify that I am
Eutopia Williams, Pro Se Plaintiff and that I served
This document on all parties of record on this 28th
Day of May, 2025

[8]